931 P.2d 1195

**De'Arley BARBER and George Barber, wife and husband, Plaintiffs–Respondents,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation, Defendant–Appellant.**

No. 22283.

Supreme Court of Idaho, North Idaho, October 1996 Term.

Jan. 27, 1997.

Clements, Brown & McNichols, Lewiston, for defendant–appellant. Dean Wullenwaber argued.

Aherin, Rice & Anegon, Lewiston, for plaintiffs–respondents. Darrel W. Aherin argued.

SCHROEDER, Justice.

This is an appeal by State Farm Insurance Company from the district court's determination that its insureds, the Barbers, are entitled to attorney fees pursuant to section 41–1839 of the Idaho Code. The Barbers were awarded attorney fees by the district court following arbitration of a claim for personal injury resulting from a collision with an uninsured motorist. State Farm argues that the district court erred in applying Idaho law to the attorney fee issue instead of Washington law. The Barbers request an award of attorney fees on appeal.

## I.

### BACKGROUND AND PROCEDURAL HISTORY

George and De'Arley Barber were residents of Clarkston, Washington, on May 22, 1988, when they purchased an automobile

insurance policy ("the policy") for their motorhome from State Farm Insurance Company ("State Farm") from a State Farm agent in Washington. The policy includes coverage for bodily injury resulting from accidents involving uninsured or under-insured ("UIM") motorists and provides coverage for medical expenses. The policy contains an arbitration clause giving either the Barbers or State Farm the right to arbitrate disputes involving claim payments and specifies that arbitration will be conducted in the county in which the insured resides.[1] The policy also contains a covenant providing that State Farm can recalculate premiums based on rates applicable in a new location upon change of residence by an insured.[2]

The Barbers were involved in an accident with an uninsured motorist on May 15, 1991, while operating their motorhome in Oregon. The uninsured motorist caused the accident, and fault is not an issue on appeal. De'Arley Barber sustained physical injury as a result of that accident. The Barbers resided in Washington at that time, but subsequent to the accident, they moved to Lewiston, Idaho.

On October 17, 1993, the Barbers' attorney provided State Farm with a settlement brochure for the injury claim in the amount of $164,897.11. State Farm responded with a $9,000 offer on November 3, 1993, which was to remain open until November 30, 1993. State Farm also indicated at that time it would take the necessary steps to begin the arbitration process after expiration of the offer.

Negotiations to settle the claim failed, and the Barbers filed a breach of contract suit

against State Farm in district court in Idaho. State Farm notified the Barbers that it had contacted its attorney to begin the arbitration proceedings. The district court stayed proceedings pending arbitration.

The Barbers were awarded $38,422.13 in the arbitration, and the award was submitted to the district court for confirmation. The Barbers requested $863.30 in prejudgment interest, $200.00 in discretionary costs and $14,044.40 in attorney fees. State Farm objected to a portion of the award on the basis that the Barbers had already received some payments. State Farm also moved to disallow costs and attorney fees, arguing that under Washington law attorney fees are unavailable if the underlying dispute is resolved by arbitration.

The district court confirmed the arbitration award and entered judgment for the Barbers on their claim for attorney fees in the amount of $14,044.40. State Farm appeals the award of attorney fees. The Barbers request attorney fees associated with defending against the appeal.

## II.

### STANDARD OF REVIEW

■ The Barbers urge this Court to affirm the district court's decision unless State Farm shows that the district court's decision was clearly erroneous or that it manifestly abused its discretion in making the award. This is the correct standard of review when a dispute concerns the amount of attorney fees awarded, *Brinkman v. Aid*

1. **SECTION III—UNDERINSURED MOTOR VEHICLE—OVERAGES U AND UIM, Deciding Fault and Amount,** provides in relevant part:
 1. Is the **insured** legally entitled to collect damages from the owner or driver of the **underinsured motor vehicle;** and
 2. If so, in what amount?
 If there is no agreement, these questions shall be decided by arbitration upon written request of the **insured** or us. Each party shall select a competent and impartial arbitrator.
 . . . .
 The arbitration shall take place in the county in which the **insured** resides unless the parties agree to another place. State court rules governing procedure and admission of evidence shall be used.

2. The **CONDITIONS** portion of the policy provides in relevant part:
 **Change of Residence.**
 When we receive notice that the location of principal garaging of the vehicle described on the declarations page has been changed, we have the right to recalculate the premium based on the coverages and rates applicable in the new location. When the change of location is from one state to another and you are a risk still acceptable to us at the time you notify us of the change, we shall replace this policy with the policy form currently in use in the new state of garaging.

*Ins. Co.,* 115 Idaho 346, 350–51, 766 P.2d 1227, 1231–32 (1988), but that is not the issue in this case. This case involves determination and application of the appropriate conflicts of law analysis which is a question of law. *Seubert Excavators, Inc. v. Anderson Logging Co.,* 126 Idaho 648, 652, 889 P.2d 82, 86 (1995). In reviewing questions of law the Court exercises free review and is not bound by findings of the district court but may draw its own conclusions from the evidence presented. *Mutual of Enumclaw v. Box,* 127 Idaho 851, 852, 908 P.2d 153, 154 (1995).

## III.

## AN AWARD OF ATTORNEY FEES PURSUANT TO SECTION 41–1839 OF THE IDAHO CODE CONFLICTS WITH WASHINGTON LAW.

▮ Under Idaho law an insured with an uninsured motorist claim who complies with the notice requirements of section 41–1839 of the Idaho Code and recovers more in arbitration than the insurer offered is entitled to recover attorney fees from the insurer. *Wolfe v. Farm Bureau Ins. Co.,* 128 Idaho 398, 403, 913 P.2d 1168, 1173 (1996); *Emery v. United Pac. Ins. Co.,* 120 Idaho 244, 246, 815 P.2d 442, 444 (1991). "The purpose of Idaho Code Section 41–1839 is to prevent the sum that is due the insured under the policy from being diminished by expenditures for services of an attorney." *Walton v. Hartford Ins. Co.,* 120 Idaho 616, 620, 818 P.2d 320, 324 (1991); *Halliday v. Farmers Ins. Exch.,* 89 Idaho 293, 301, 404 P.2d 634, 639 (1965).

▮ Generally, in Washington the court does not have collateral authority to go behind the face of an arbitrator's award and determine whether additional amounts are appropriate. *Dayton v. Farmers Ins. Group,* 124 Wash.2d 277, 279, 876 P.2d 896, 897 (1994). The Washington Supreme Court has explained that Washington's policy is to put the insured in the same position as if the tortfeasor had carried liability insurance and reasoned that to provide attorney fees after an uninsured motorist arbitration would give the insured more than he or she had contracted for. *Id.* at 279, 876 P.2d at 898.

▮ Washington's policy is not absolute. A Washington court may award attorney fees when an insured is compelled to assume the burden of legal action to obtain the full benefit of the insurance contract. *McGreevy v. Oregon Mut. Ins. Co.,* 128 Wash.2d 26, 904 P.2d 731, 734 (1995); *Olympic S.S. Co. v. Centennial Ins. Co.,* 117 Wash.2d 37, 811 P.2d 673, 681 (1991). However, that rule does not apply when the controversy is merely over the amount of a claim, 904 P.2d at 734 n. 4; *See also Dayton v. Farmers Ins. Group,* 124 Wash.2d 277, 876 P.2d 896 (1994). Idaho law and Washington law are different.

The Barbers make the further argument that no conflict of law exists between Idaho and Washington law even though Washington does not have a provision similar to I.C. § 41–1839, arguing that attorney fees are still obtainable because State Farm is subject to RCW 48.01.030 which requires it to act in good faith. The Barbers assert that by failing to pay their claim State Farm breached this duty and this breach is a violation under the Washington Consumer Protection Act ("WCPA"). However, the elements of proof necessary for an award under the WCPA are different from the requirements of I.C. § 41–1839. Therefore, a conflict of law between Washington and Idaho does exist.

## IV.

## THE CONTRACT DOES NOT CONTROL THE CHOICE OF LAW.

▮ The Barbers maintain that the insurance contract contemplates application of the law of the state in which the insureds reside, Idaho. The arbitration clause provides the following:

> The arbitration shall take place in the county in which the insured resides unless the parties agree to another place. State court rules governing procedure and admission of evidence shall be used.

▮ Ambiguous contracts are construed against the drafting party. *Haener v. Ada County Highway Dist.,* 108 Idaho 170, 173, 697 P.2d 1184, 1187 (1985); *Toevs v. Western Farm Bureau Life Ins. Co.,* 94 Ida-

ho 151, 153, 483 P.2d 682, 684 (1971). The main objective in contract construction is to give effect to the intent of the parties which should, if possible, be ascertained from the language of the documents. *Twin Lakes Village Property v. Crowley,* 124 Idaho 132, 135, 857 P.2d 611, 614 (1993). However, this does not aid the Barbers. The language of the arbitration clause is not ambiguous and cannot be construed reasonably as a choice of law clause. The arbitration clause does not state that the substantive law of the state in which the insureds reside will apply. The arbitration clause provides for application of the rules governing procedure and admission of evidence of the state in which the insureds reside. Procedural law and rules do not generally implicate a substantive choice of law. *Rungee v. Allied Van Lines, Inc.,* 92 Idaho 718, 722, 449 P.2d 378, 382 (1968). This language indicates that the clause is meant as a choice of forum clause, not a choice of law clause.

## V.

## WASHINGTON HAS THE MOST SIGNIFICANT RELATIONSHIPS TO THE TRANSACTION AND THE PARTIES AND WASHINGTON'S LAW APPLIES.

This Court applies the most significant relationship test in conflict of law resolution and has opted in favor of applying the test as set forth in the American Law Institute Restatement (Second) of Conflict of Laws, although it has not adopted the Restatement formulation in full. *Seubert Excavators Inc. v. Anderson Logging Co.,* 126 Idaho 648, 651, 889 P.2d 82, 85 (1995), *see also Unigard Ins. Group v. Royal Globe Ins. Co.,* 100 Idaho 123, 126, 594 P.2d 633, 636 (1979); *Rungee,* 92 Idaho at 722–23, 449 P.2d at 382–83. "The goal of this test is to identify the state most significantly related to a particular issue and to apply its law to resolve that

issue." *Seubert,* 126 Idaho at 651, 889 P.2d at 85.

 In this case the law of the state which is the principal location of the insured risk will be applied "unless with respect to the particular issue, some other state has a more significant relationship ... to the transaction and the parties, in which event the local law of the other state will be applied."[3] .RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193; *See also* Mathias and Shugrue, CHOICE OF LAW FROM THE POLICYHOLDER'S PERSPECTIVE, 4 No. 5 Coverage 20, 21. Washington was the principal place of the insured risk. Washington was the state in which the Barbers' motorhome was garaged at the time of the accident, and the Barbers' premiums were based on the fact that they garaged their motorhome in Washington.

Other factual considerations in determining if Idaho has a more significant relationship to the transaction and the parties are outlined in *Rungee:*

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Rungee,* 92 Idaho at 723, 449 P.2d at 383 (quoting Restatement (Second) Conflicts of Law § 188).

In the present case there are varied factual contacts with both states. The policy was negotiated and was formed in Washington, utilizing premiums applicable in Washington. The motorhome was garaged in Washington but is inherently mobile. The Barbers were Washington residents when the accident occurred in Oregon. Subsequently, the Barbers moved to Idaho and resided in Idaho when State Farm was called upon to perform

---

**3.** In *Rungee v. Allied Van Lines, Inc.,* 92 Idaho 718, 449 P.2d 378 we determined that Idaho law applied to the issue of attorney fees pursuant to I.C. § 41–1839 to a contract negotiated in Florida. *Rungee* is distinguishable. In that case, household goods were being shipped to Idaho by a commercial shipper. They arrived at Rungee's new home in Coeur d'Alene, Idaho in a damaged condition. In *Rungee,* the goods had "no principal location" 92 Idaho at 724, 449 P.2d at 384, and our analysis focused on § 197 of the Restatement (Second) of Conflicts of Law. *Id.*

its contract obligations. The contract provided that arbitration would take place in the state where the insureds reside. State Farm operates business offices in both Washington and Idaho. Idaho had no relationship to the parties at the time the contract was formed or at the time liability under the policy of insurance arose.

The policies to be considered in analyzing whether Idaho has a more significant relationship to the transaction and the parties are also outlined in *Rungee:*

 (a) the needs of the interstate and international systems,

 (b) the relevant policies of the forum,

 (c) the relevant policies of other interested states and the relative interests of those states in determination of the particular issue,

 (d) the protection of justified expectations,

 (e) the basic policies underlying the particular field of law,

 (f) certainty, predictability and uniformity of result, and

 (g) ease in the determination and application of the law to be applied.

*Id.* (quoting Restatement (Second) Conflict of Laws § 6).

### A. Needs of the Interstate System:

State Farm maintains that application of Idaho law will promote forum shopping. There is no evidence that the Barbers moved to Idaho to gain the benefits of section 41–1839, and for most people changing residences is sufficiently daunting to deter forum shopping. However, the fact that there are significant practical impediments to moving from one state to another to gain the benefits of the second state's law does not eliminate the possibility, particularly in border communities such as Clarkston, Washington. Application of Washington law does not promote forum shopping and to a degree deters it.

### B. Relevant Policies of the Forum, State, Other Interested States, and the Particular Field of Law:

▮ Section 41–1839 modifies Idaho's application of the general American Arbitration Association rule that the parties must bear equally all expense of arbitration. *Emery v. United Pac.,* 120 Idaho 244, 247, 815 P.2d 442, 445 (1991). The purpose of section 41–1839 is to guarantee that insureds who are forced to litigate performance of the insurance contract receive the full amount due undiminished by the costs associated with litigation. *Id.* Section 41–1839 is not a penalty but an additional sum rendered as just compensation. *Walton v. Hartford Ins. Co.,* 120 Idaho at 620, 818 P.2d at 324 (1991); *Halliday v. Farmers Ins. Exch.,* 89 Idaho 293, 404 P.2d 634 (1965). Washington's law is more restrictive and is more protective of insurance companies.

Idaho has an interest in applying its law to contracts performed within this state. Washington has an interest in applying its law to contracts formed in Washington. Idaho's policy is expressed clearly by I.C. § 41–1839 protecting the insured. Washington's policy, which protects the insurer, has developed through case law. It is more difficult to discern the strength of the policy in Washington since there are exceptions which allow the insured to recover attorney fees against the insurer in limited circumstances. The clarity and certainty of Idaho's law weighs in favor of applying Idaho law. However, this is only one of the factors to be considered.

### C. The Protection of the Justified Expectations of the Parties:

There are several justified expectations of the parties that can be identified. Initially, both parties could expect to apply the law of Washington where the contract was formed and where the Barbers resided. A second expectation might arise at the time of the accident. Again, the Barbers were residents of Washington and both parties could expect Washington law to apply to the issues in this case. Finally, the Barbers might form an expectation that the law of the forum state would apply, but that is not provided for in the contract and there is no rule in Idaho that mandates that result. Applying the law of the state of residence at the time of the accident protects justified expectations that the parties shared at the time rights under the contract were fixed.

#### D. The Promotion of Predictability and Uniformity of Result:

Any of the three possible resolutions of the conflict of law issue would result in a degree of predictability and promote uniformity. However, predictability for parties to an insurance contract is served best by selecting either the state of residence of the insureds at the time the contract is formed or at the time the accident occurs. The appropriate premiums and the applicable law would be known by both parties to the contract. However, the insurer cannot determine where it might be called upon to respond or how to set its rates if the residence of the insured at the time enforcement is sought is determined to be the appropriate state. Similarly, in some instances an insured would suffer a diminution of rights from those existing at the time of the accident if the law of the state of residence at the time of enforcement were applied.

#### E. Ease in Determination and Application of the Law to be Applied:

The final policy consideration to be considered is ease in the determination and application of the law to be applied. To some degree it is easier for a court in the forum state to apply its own law, but it is not unusual for a court to look to the law of another state. This policy consideration does not weigh in favor of applying the law of one state over that of the other.

In this case the most significant relationships attach to the state of Washington. The contract was negotiated and formed in Washington. The Barbers were residents of Washington at the time the contract was formed and at the time of the accident. The motorhome was garaged in Washington. The insurance rates were determined according to the structure applicable in Washington. When the accident occurred it is clear that Washington law would have applied to the issues in this case. Washington was the principal location of the insured risk. Idaho's contact with this case came about subsequent to the time when the Barbers' rights under the contract were fixed.

The law of Washington applies to the determination of whether the Barbers are entitled to attorney fees.

### VI.

### CONCLUSION

The decision of the district court entering judgment in favor of the Barbers on their claim for attorney fees is vacated. The case is remanded to the district court for determination of the claim for attorney fees under Washington law. State Farm is awarded costs on appeal. Neither party is awarded attorney fees on appeal.

McDEVITT, C.J., JOHNSON and SILAK, JJ., and CAREY, Justice Pro Tem., concur.