IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| KEY BANK, N.A. | ) | No. 83104-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GINGER ATHERTON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant, | ) | |
| | ) | |
| HENRY DEAN, as trustee for the | ) | |
| Sharon Graham Bingham 2007 Trust; | ) | |
| ESTATE OF SCOTT BINGHAM; | ) | |
| KELLY BINGHAM; UMPQUA BANK; | ) | |
| OPUS BANK, as successor-in-interest | ) | |
| to Cascade Bank; WASHINGTON | ) | |
| FEDERAL, N.A., itself and as | ) | |
| successor-in-interest to Horizon Bank, | ) | |
| WASHINGTON FEDERAL N.A.; | ) | |
| WASHINGTON TRUST BANK; FIRST | ) | |
| CITIZENS BANK AND TRUST CO., | ) | |
| as successor-in-interest to Venture | ) | |
| Bank; STATE OF WASHINGTON; | ) | |
| DEPT. OF REVENUE; CENTRUM | ) | |
| FINANCIAL SERVICES, INC., MUFG | ) | |
| UNION BANK, N.A., itself and as | ) | |
| successor-in-interest to Frontier Bank; | ) | |
| PEARLMARK REAL ESTATE | ) | |
| PARTNERS; PEARLMARK | ) | |
| MEZZANINE REALITY PARTNERS II | ) | |
| LLC; LVB-OGDEN MARKETING, | ) | |
| INC., LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

VERELLEN, J. — Two issues predominate in Ginger Atherton's appeal from a trial court order denying her motion to compel arbitration and to stay a deed of trust foreclosure pending the outcome of the arbitration. First, Atherton contends the trial court took on a role reserved for an arbitrator by deciding a condition precedent to arbitrability. But the condition she identifies as a right to redeem if Key Bank prevails at a pending sheriff's sale is not a condition precedent to arbitrability. Second, she relies on the mandate of RCW 7.04A.070(5) that the trial court must issue a stay pending a final decision on a motion to compel arbitration. But the trial court here did issue a final decision on the motion to compel arbitration.

We affirm.

## FACTS

In 2007, KeyBank loaned Scott and Kelly Bingham[1] $2.5 million. KeyBank's loans were secured by deeds of trust against the property located at 721 250th Lane NE, Sammamish, Washington. The property served as the security to ensure repayment of the loans.

That same year, Scott and Kelly Bingham quitclaimed the property to the "2007 Sharon Graham Bingham Trust."[2] Henry Dean, the trustee of the trust, and his wife, Ginger Atherton, have lived on the property since 2007.

In 2019, after extensive negotiations, the trust and KeyBank entered into a settlement and release agreement and a redemption agreement.

---

[1] Because the parties share the same last name, we refer to them by their first names for clarity.

[2] Clerk's Papers (CP) at 137.

2

The settlement agreement provided that KeyBank and the trust stipulated to judgments of foreclosure in KeyBank's favor, that KeyBank would foreclose on the liens against the property securing the loans, and that KeyBank would credit bid at least $4.2 million at the sheriff's sale.

The redemption agreement provided that if KeyBank acquired the property at the sheriff's sale, the trust could redeem the property from KeyBank by paying KeyBank $1.6 million, but if KeyBank did not prevail at the sheriff's sale, then KeyBank would retain $3 million and pay the trust any additional funds that it received from the sale.

KeyBank and the trust also stipulated that KeyBank's deeds of trust were valid and enforceable, that the liens in favor of KeyBank were superior to any other interests, and that KeyBank was entitled to a final judgment of foreclosure.

In 2020, Dean assigned the trust's "right, title and interest in" the settlement and redemption agreements to Atherton.[3]

On June 29, 2021, KeyBank filed its motion for a final decree of foreclosure. Atherton filed an emergency motion to compel arbitration and to stay KeyBank's foreclosure. Atherton argued that the parties should be compelled to arbitrate the validity of the trust's stipulation that KeyBank obtained from the settlement agreement and whether KeyBank failed to perform under the settlement agreement.

---

[3] CP at 174.

The trial court granted KeyBank's motion for a final decree of foreclosure and denied Atherton's motion to compel arbitration. The court noted that the ruling on Atherton's motion was "without prejudice, pending completion of a sheriff's sale of the [p]roperty."[4] Atherton filed a motion for reconsideration. The trial court denied Atherton's motion.

Dean filed a $60,000 cash supersedeas to stay KeyBank's foreclosure. KeyBank opposed the supersedeas, arguing that it did not comply with RAP 18.1. The trial court concluded that the $60,000 supersedeas was inadequate to supersede the foreclosure judgment and stop the sale under RAP 18.1. Commissioner Kanazawa rejected Atherton's objection to the trial court's decision.[5]

Atherton appeals.

## ANALYSIS

### I.  Motion to Compel Arbitration

Under the Uniform Arbitration Act (UAA), chapter 7.04A RCW, the legislature has delegated which preliminary issues must be decided by the trial court and which issues are to be decided by the arbitrator.[6]

---

[4] CP at 178.

[5] The trial court set the supersedeas amount at $1 million.

[6] See Townsend v. Quadrant Corp., 173 Wn.2d 451, 456-57, 268 P.3d 917 (2012).

RCW 7.04A.060, the validity of agreement to arbitrate statute, provides that a court "shall decide whether an agreement to arbitrate exists or [whether] a controversy is subject to an agreement to arbitrate"[7] and an arbitrator "shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable."[8]

In Townsend v. Quadrant Corp., our Supreme Court noted a comment to the UAA which explains that the provisions of RCW 7.04A.060 are intended to

> "incorporate the holdings of the vast majority of state courts and the law that has developed under the [Federal Arbitration Act] that, in the absence of an agreement to the contrary, issues of substantive arbitrability, i.e., whether a dispute is encompassed by an agreement to arbitrate, are for a court to decide and issues of procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide."[9]

A condition precedent to arbitrability under section .060(3) contemplates arbitration provisions that have procedural prerequisites that must be satisfied before the trial court compels arbitration. For example, a contract might contain an

---

[7] RCW 7.04A.060(2).

[8] RCW 7.04A.060(3) (emphasis added).

[9] 173 Wn.2d 451, 457, 268 P.3d 917 (2012) (quoting UAA § 6 cmt. 2, 7 U.L.A. 24 (2005)); see also RCW 7.04A.901 ("In applying and construing this uniform act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it."). A trial court may decide the gateway issues such as whether an arbitration clause is invalid. See Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 813-14, 225 P.3d 213 (2009) ("'generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA].'") (quoting Zuver v. Airtouch Commc'ns, Inc., 153 Wn.2d 293, 302, 103 P.3d 753 (2004)).

arbitration provision that requires a party to wait a certain number of days before compelling arbitration, or a contract could contain an arbitration clause that requires the parties to mediate before a party moves for arbitration.[10]

Atherton insists that by denying her motion to compel arbitration "without prejudice, pending a completion of a sheriff's sale of the [p]roperty,"[11] the trial court took on a role exclusively reserved for the arbitrator by deciding whether a condition precedent to arbitrability had been fulfilled. But KeyBank argued to the trial court that "[a]rbitration [was] premature because the condition precedent to Atherton's option/redemption right—KeyBank's acquisition of the property after the sheriff's sale—ha[d] not yet occurred."[12]

We review a trial court's decision to grant or deny a motion to compel arbitration de novo.[13]

---

[10] See Heights at Issaquah Ridge, Owners Ass'n v. Burton Landscape Grp., Inc., 148 Wn. App. 400, 406-07, 200 P.3d 254 (2009) (the appellate court held that a 21-day time limit in an arbitration agreement was a condition precedent to arbitrability and was therefore an issue for the arbitrator to decide). See, e.g., James Acret and Annette Davis Perrochet, Conditions Precedent to Arbitration, CONSTRUCTION ARBITRATION HANDBOOK § 3:48 (2d ed. 2021) ("No demand for arbitration . . . may be made until . . . the date on which the architect has rendered his written decision of the 10th day after the parties have presented their evidence to the architect or have been given a reasonable opportunity to do so, if the architect has not rendered his written decision by that date"; "notice of a claim must be presented to the board of education within three months after the accrual of a claim before bringing any action or special proceeding against the board." (internal quotation marks omitted) (citations omitted)).

[11] Appellant's Reply Br. at 2.

[12] CP at 132.

[13] Townsend, 173 Wn.2d at 455 (quoting Satomi, 167 Wn.2d at 797).

At the core of this appeal is a disagreement between the parties whether the trial court made a final decision by denying Atherton's emergency motion to compel arbitration and her motion to stay KeyBank's motion for a judgment and decree of foreclosure.

Specifically, the redemption agreement provided,

If KeyBank is the successful bidder at the sheriff's or trustee's sale following completion of the foreclosure proceedings in the Superior Court Action, then the Trust may exercise the Redemption by delivering written notice thereof to KeyBank (such notice, the "Exercise Notice"), and by concurrently depositing a fully executed copy of this Redemption agreement $1,600,000 USD in immediately available funds ("Redemption Price") to Escrow, on or before June 1, 2020. The Trust's delivery of the Exercise Notice shall be deemed to be an irrevocable election to purchase the Property pursuant to the terms of this Redemption agreement. The Redemption will terminate if the Trust fails to exercise it in the time and manner provided in this Section. Except for the Redemption, the Bingham Parties expressly waive any and all claims or rights in the Property, including any statutory or redemption rights.[14]

And the settlement agreement provided,

Any disputes related to or arising under this Agreement will be arbitrated before Stew Cogan, or if he is unwilling or unavailable to serve, then selected according to the procedure described in the Prior Settlement. Arbitration will include only the terms of this Agreement, exclusive of testimony or other extrinsic evidence about the Parties' rights and obligations, and will conclude no later than 30 days from submission to the arbitrator or as soon thereafter as the arbitrator's schedule allows. The arbitrator's decision under this Section is binding on the Parties and cannot be appealed.[15]

Here, under the redemption agreement, KeyBank prevailing at the foreclosure sale is a condition precedent to the trust or Atherton exercising the

---

[14] CP at 156.
[15] CP at 139.

right to redeem the property from KeyBank for $1.6 million. But this is distinct from the type of condition precedent that section .060(3) contemplates because this condition precedent has no procedural effect on arbitrability. Rather, the condition here solely relates to when or whether Atherton can "exercise the Redemption." Because Atherton's conditional redemption right is not a condition precedent to arbitrability, the trial court did not take on a role reserved exclusively to the arbitrator.

It is not entirely clear how the trial court arrived at the precise language that "the [m]otions are denied without prejudice, pending completion of a sheriff's sale of the [p]roperty,"[16] but our de novo review, coupled with Atherton's narrow arguments, do not persuade us to reverse the trial court's decision denying Atherton's motion to compel arbitration and motion to stay the proceedings.

First, to the extent that KeyBank contends that the foreclosure sale is a condition precedent to any vesting, acquisition, or assertion of Atherton's right to redeem, Atherton provides no authority whether such hypothetical, premature, unripe, or tentative claims are beyond the authority of a trial court faced with a motion to compel arbitration of a dispute that is grounded in the assertion of Atherton's right to redeem.[17]

---

[16] CP at 178.

[17] There is no Washington case that addresses the issue of whether the trial court can compel a premature nonjusticiable claim to arbitration. And there does not appear to be a consensus on this issue in other jurisdictions. For example, in Bunker Hill Park Ltd. v. U.S. Bank National Ass'n, a California appellate court held "all a petitioner is required to show before arbitration 'shall' be ordered is the existence of a valid agreement to arbitrate the issue underlying the petition and the

Second, the mere reference by the court that Atherton's motion to compel was denied "without prejudice" until some future developments took place, namely, the sheriff's sale, does not render the court's denial ineffective. We read the trial court's ruling as a clear denial of the motion to compel arbitration that was pending before the trial court.

Third, viewing the trial court's order as a final order denying the motion to compel arbitration is consistent with Atherton's assertion that the court's order is appealable as a matter of right. RCW 7.04A.280(1)(a) recognizes that an appeal may be taken from "[a]n order denying a motion to compel arbitration." A trial court's order compelling arbitration and denying a motion to stay judicial proceedings is appealable as of right under RAP 2.2(a)(3) because the order has the result of discontinuing the action for an arbitration.[18] Consistent with the application of RAP 2.2(a)(3), the court's ruling here that "the motions are denied" had the similar impact of discontinuing the action for arbitration. Therefore, in this

---

opposing party's refusal to arbitrate the controversy." 231 Cal. App. 4th 1315, 1329, 180 Cal. Rptr. 3d 714 (2014). But in Lower Colorado River Authority v. Papalote Creek II, LLC, the Fifth Circuit Court of Appeals held that in deciding whether to grant or deny a motion to compel arbitration "we must 'look through' the petition to compel arbitration in order to determine whether the underlying dispute presents a sufficiently ripe controversy to establish federal jurisdiction." 858 F.3d 916, 922 (5th Cir. 2017). It appears that the trial court in rendering its decision here "looked through" Atherton's motion to compel arbitration in determining that a condition precedent, the foreclosure sale, must be met before either a trial court or an arbitrator could reach the merits of her claims. But based upon this record and limited briefing, we decline to further address this issue.

[18] See Herzog v. Foster & Marshall, Inc., 56 Wn. App. 437, 445, 783 P.2d 1124 (1989).

context, the court's order denying arbitration at this point in the litigation was a final decision.

Many of Atherton's arguments focus upon the stay provisions of RCW 7.04A.070(5). Section .070(5) compels a court to impose a stay "until the court renders a final decision" in regard to the motion to compel arbitration. But that provision no longer applies once a final decision is made denying the motion to compel arbitration. And, as discussed, the trial court's denial of Atherton's motion to compel arbitration was a final decision. RCW 7.04A.070(5) has no impact here.[19]

Other than general unsupported assertions about the narrow role of a trial court facing a motion to compel arbitration, Atherton provides no specific argument or authority that compels an arbitrator to decide the issues presented in this unusual setting. And on this record and this briefing, our de novo review leads us to the conclusion that the motion to compel arbitration was properly denied and therefore, no stay is mandated under RCW 7.04A.070(5).

## II. Fees on Appeal

KeyBank requests attorney fees on appeal. As the prevailing party, KeyBank is entitled to reasonable attorney fees based upon the settlement or

---

[19] Our decision has no impact on the application or enforcement of the supersedeas bond issued by the trial court.

redemption agreement's attorney fee provisions, subject to their compliance with RAP 18.1.[20]

Finally, because Atherton does not prevail here, her request that the parties be ordered to arbitration is denied.

We affirm.

_____

WE CONCUR:

_____          _____

---

[20] Key Bank's alternate theory for fees on appeal under RAP 18.9(a) for a frivolous appeal is not compelling because Atherton raises some debatable issues. Streater v. White, 26 Wn. App. 430, 434-35, 613 P.2d 187 (1980).